1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11 | XOCHITL VIVANCO DUENAS,                    ) Case No.: 1:14-cv-00406 - JLT
                                             )
12 |            Plaintiff,                     ) ORDER GRANTING DEFENDANTS' MOTIONS
                                             ) TO DISMISS
13 |     v.                                   )
                                             ) (Docs. 5, 20)
14 | OCWEN LOAN SERVICING, LLC; MTC           )
   | FINANCIAL, INC. and FEDERAL HOME         )
15 | LOAN MORTGAGE CORPORATION,               )
                                             )
16 |            Defendants.                    )
   | _____ )

17

18       Defendants MTC Financial Inc., doing business as Trustee Corps; Ocwen Loan Servicing, LLC;

19 and Federal Home Loan Mortgage Corporation seek dismissal of the claims of Plaintiff Xochitl

20 Vivanco Duenas pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 5, 20.)

21 Because the Court determined the matters were suitable for decision without oral argument, the

22 motions were taken under submission pursuant to Local Rule 230(g).  For the following reasons,

23 Defendants' motions are **GRANTED.**

24 **I.      Factual and Procedural History**

25       Plaintiffs initiated an action by filing a complaint in Kern County Superior Court Case No. S-

26 1500-CV-281048 against Defendants Ocwen Loan Servicing, LLC; MTC Financial, Inc.; and several

27 "Doe" defendants on January 8, 2014. (Doc. 1-1.)  On February 27, 2014, Plaintiff filed an Amendment

28 to Complaint, substituting Federal Home Loan Mortgage Corporation ("Freddie Mac") for Doe 1.  (*Id.*

at 2, 79.)  Plaintiff alleges the defendants are liable for ten causes of action based upon the foreclosure of the mortgage on their primary residence.  (*See id.* at 6.)  Defendant Freddie Mac filed a Notice of Removal on March 21, 2014, thereby initiating the action before this Court.  (Doc. 1.)

On April 1, 2014, MTC Financial Inc., doing business as Trustee Corps ("Trustee Corps" or "MTC") filed a motion to dismiss, asserting Plaintiff's complaint fails to state a claim upon which relief may be granted against Trustee Corps.  (Doc. 5.)  Trustee Corps argues the complaint should be dismissed without leave to amend, because Plaintiff cannot state facts sufficient to cure the defects of the complaint.  (*Id.*)  Plaintiff filed her opposition to the motion on April 8, 2014 (Doc. 15), to which Trustee Corps filed a reply on April 28, 2014 (Doc. 18).

On May 1, 2014, Defendants Freddie Mac and Ocwen Loan Servicing, LLC ("Ocwen") also filed a motion to dismiss pursuant to Rule 12(b)(6).  (Doc. 20.)  According to Defendants, "Plaintiff sets forth absolutely no allegations of ultimate fact as to Freddie Mac and the complaint utterly fails to state a claim for relief as to Freddie Mac."  (*Id.* at 3.)  In addition, Defendants assert that her contract-based claims against Ocwen Loan Servicing fail because Plaintiff "does not identify any written promise by Ocwen for a permanent loan modification."  (*Id.*)  Plaintiff filed her opposition to the motion on May 15, 2015 (Doc. 24), to which Defendants filed a reply on June 6, 2014 (Doc. 25).

The parties consented to the jurisdiction of a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c)(1), after which the pending motions to dismiss were transferred to the undersigned on August 28, 2014.  (*See* Doc. 40 at 1.)

## II.      Background and Plaintiff's Allegations

Plaintiff alleges she purchased the real property commonly known as 810 Houchin Road, Bakersfield, California ("the Property") on June 20, 2007.  (Doc. 1-1 at 10, ¶ 17.)  She financed the Property by executing a promissory note in the sum of $155,000.00 and a Deed of Trust, which was recorded as document number 0207151609 in the Official Records of the Kern County Recorder's Office.  (*Id.*)  The Deed of Trust identified Plaintiff as the borrower; First American Title Insurance Company as the trustee; and Indymac Bank, FSB, as the lender.  (*Id.*)

Plaintiff obtained a home mortgage loan modification through the Home Affordable Modification Program ("HAMP") with Indymac Bank, a division of OneWest Bank, on December 12,

2009.  (Doc. 1-1 at 10, ¶ 19; *see also* Doc. 1-1 at 53.)

On July 29, 2013, the Substitution of Trustee was recorded with the Kern County Recorder's Office as document number 000213106163.  (Doc. 1-1 at 10, ¶ 18.)  The Substitution identified the new trustee as MTC Financial, Inc.  (*Id.*)  The same day, MTC "caused to be recorded a Notice of Default and Election to Sell Under Deed of Trust," which the Kern County Recorder identified as document number 000213106179.  (*Id.,* ¶ 20.)  The Notice of Default instructed Plaintiff: "[T]o find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: OneWest Bank, FSB."  (*Id.* at 10-11, ¶ 20.)

According to Plaintiff, "[the] loan was transferred immediately thereafter" to Ocwen Loan Servicing, LLC ("Ocwen") in August 2013.  (Doc. 1-1 at 11, ¶ 21.)  Plaintiff reports that when she attempted to make the modified loan payment to Ocwen, the company "would not honor the modification agreement."  (*Id.*)  In addition, Plaintiff asserts that she "submitted a modification application to [Ocwen] once the loan was transferred."  (*Id.*, ¶ 23.)  Plaintiff asserts that Ocwen "informed Plaintiff to remain in default on the loan if Plaintiff wanted to obtain a modification."  (*Id.*, ¶ 21.)  She alleges that she relied upon this representation that she needed to default on the loan to obtain a modification with Ocwen, and defaulted on the loan.  (*Id.*, ¶ 21.)  In addition, Plaintiff asserts that she "submitted a modification application to [Ocwen] once the loan was transferred.

On October 23, 2013, an Assignment of Deed of Trust was recorded with the Kern County Recorder's Office, under which Indymac Bank "granted, assigned, and transferred . . . all beneficial interest under the Deed of Trust" to Ocwen.  (Doc. 1-1 at 11, ¶ 22.)

A Notice of Trustee's Sale was recorded as document number 000213174532 on December 4, 2013.  (Doc. 1-1 at 11, ¶ 23.)  The Notice of Trustee's Sale indicated that the Property would be sold on December 30, 2014.  (*Id.*)  Plaintiff asserts that her loan modification application was still under review by Ocwen when the company proceeded with the foreclosure sale.  (*Id.*, ¶ 24.)  Plaintiff alleges:

> When Plaintiff was told that the house was still going to sale, Plaintiff told OCWEN that she did not want to lose the home and wanted to reinstate her loan and pay the entire amount in default. OCWEN advised that even if they received the payment via overnight mail, they would not stop the sale. Instead, the representative stated that if Plaintiff emailed them a bank statement showing that she had the funds in the account they would stop the sale date. Plaintiff did so immediately, yet the property still went to auction.

(*Id.*)  According to Plaintiff, "[a]t all times relevant. . . and leading up to the foreclosure sale, Plaintiff [was] willing and able to tender funds to satisfy the alleged deficiency, and was prepared to make that tender if necessary to stop a foreclosure sale."  (*Id.* at 12, ¶ 28.)

On January 31, 2014, an Assignment of the Deed of Trust from Ocwen Loan Servicing, LLC to Freddie Mac was recorded.  In addition, a Trustee's Deed Upon sale was recorded, showing the Property was sold and reverted to Freddie Mac on December 30, 2013.

Based upon these facts, Plaintiff asserts the Property "was wrongfully foreclosed upon." (Doc. 1-1 at 12, ¶ 25.)  In addition, Plaintiff argues that "Defendants engaged in dual tracking" by "[f]ailing to honor the modification agreement Plaintiff already had, and simultaneously reviewing [her application] for a loss mitigation alternative."  (*Id.* at 11-12, ¶¶ 23, 25.)  Plaintiff asserts Ocwen is liable for a breach of contract. (*Id.* at 12.)  Further, Plaintiff states the following causes of action against all Defendants: (1) breach of the covenant of good faith and fair dealing; (2) promissory estoppel; (3) a violation of Cal. Civ. Code § 2937; (4) violations of Cal Civ. Code §§ 2923.6 and 2923.7; (5) negligence; (6) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; (7) to set aside Trustee's sale; (8) to cancel Trustee's deed; (9) and quiet title.

In response, Defendants filed the motions to dismiss now pending before the Court, seeking dismissal of all of Plaintiff's claims against the company pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Docs. 5, 20.)

### III.    Legal Standards for a Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, under Rule 12(b)(6), the Court's review is generally "limited to the complaint alone."  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court explained,

1   A claim has facial plausibility when the plaintiff pleads factual content that allows the
2   court to draw the reasonable inference that the defendant is liable for the misconduct
    alleged.  The plausibility standard is not akin to a "probability requirement," but it asks
3   for more than a sheer possibility that a defendant has acted unlawfully. Where a
    complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops
    short of the line between possibility and plausibility of 'entitlement to relief.'"

4

5   *Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted). Further, allegations of a complaint

6   must be accepted as true when the Court considers a motion to dismiss.  *Hospital Bldg. Co. v. Rex*

7   *Hospital Trustees*, 425 U.S. 738, 740 (1976).

8       A court must construe the pleading in the light most favorable to the plaintiff, and resolve all

9   doubts in favor of the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  "The issue is not

10  whether a plaintiff will ultimately prevail, but whether the claimant is entitled to officer evidence to

11  support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote

12  and unlikely but that is not the test."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  However, the

13  Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to

14  plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Assoc. v.*

15  *Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  Leave to amend should not be granted if "it is clear that

16  the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney,*

17  *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

18  **IV.     Requests for Judicial Notice**

19      Defendants filed requests for judicial notice in conjunction with their motions to dismiss.

20  (Docs. 7, 21.)  Specifically, Defendants seek judicial notice of the following documents: (1) the Deed

21  of Trust recorded on July 20, 2007; (2) the Assignment of Deed of Trust recorded on July 29, 2009; (3)

22  the Notice of Default recorded June 24, 2009; (4) the Substitution of Trustee recorded on August 5,

23  2009; (5) the Substitution of Trustee recorded on July 29, 2013; (6) the Notice of Default and Election

24  to Sell Under Deed of Trust recorded on July 29, 2013; (7) the Assignment of Deed of Trust recorded

25  on October 23, 2013, assigning the Deed of Trust to Ocwen; (8) the Notice of Trustee's Sale recorded

26  on December 4, 2013; (9) the Assignment of Deed of Trust recorded on January 31, 2014, assigning the

27  Deed of Trust to Federal Home Loan Mortgage Corporation; and (10) the Trustee's Deed Upon Sale

28  recorded on July 31, 2014.  (Doc. 7 at 2; Doc. 21 at 2-3.)  Plaintiff does not oppose the requests for

judicial notice.

In considering a motion to dismiss, the Court may consider material outside the pleadings that is properly the subject of judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. In addition, the Court may take judicial notice of material incorporated by reference into the complaint without converting the motion to dismiss into a motion for summary judgment. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). Documents are incorporated into the complaint by reference "where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement*, 593 F.3d at 1038; *see also U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

Here, documents identified above are incorporated into Plaintiff's complaint by reference, and several are attached as exhibits thereto. (*See, e.g.,* Doc. 1-1, ¶¶ 17-22.) In addition, recorded documents are matters of public record, certified and maintained by the Kern County Recorder's Office. Therefore, Defendants' unopposed requests for judicial notice are **GRANTED**.

## V.    Discussion and Analysis

As an initial matter, Trustee Corps argues its "conduct was privileged under California Civil Code §47 and Civil Code §2924(d)." (Doc. 6 at 12, emphasis omitted.) Pursuant to Cal. Civ. Code § 47(c), any communication made "without malice, to a person interested therein" is privileged. The litigation privilege is "given expansive application by California courts," and "has been extended to *any* communication, whether or not it is a publication, and to *all* torts other than malicious prosecution." *Edwards v. Centex Real Estate Corp.*, 53 Cal.App.4th 15, 29 (2007) (emphasis in original). Further, § 2924(d) "makes the recording of the notice of default by the beneficiary, and any other statutorily authorized act of the beneficiary acting as trustee, a privileged communication under section 47." *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 340 (2008). In addition, Cal. Civ. Code § 2924(b)

creates a specific qualified privilege for trustees, stating: "the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage."

Trustee Corps asserts that "Plaintiff has not alleged factually any malice by Trustee Corps," and as a result its "actions in performance of its duties during the foreclosure process were privileged" pursuant to Cal. Civ. Code §§ 47 and 2924. (Doc. 6 at 14, emphasis omitted.)  On the other hand, Plaintiff argues that the privilege should not be applied because Trustee Corps "has failed to submit facts within the four corners of the pleading that refute Plaintiff's allegations of [its] intentional wrongful acts, nor has [Trustee Corps] shown that Plaintiff cannot reasonably plead malice."  (Doc. 15 at 10.)

Significantly, for purposes of the qualified privilege, "malice is defined as actual malice, meaning 'that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.'"  *Kachlon*, 168 Cal. App. 4th at 336 (quoting *Sanborn v. Chronicle Pub. Co.*, 18 Cal.3d 406, 413 (1976)).  Here, Plaintiff does not allege that Trustee Corps was motivated by hatred or ill will, or that Trustee Corps lacked reasonable grounds for belief of the fact that Plaintiff was in default when it recorded the Notice of Default on July 29, 2013.  Further, Plaintiff does not allege facts supporting a determination that Trustees Corps acted maliciously when the Notice of Trustee's Sale was recorded on December 4, 2013.  Consequently, Plaintiff does not allege facts that support a finding that Trustee Corps engaged in conduct not subject to the privilege afforded to a trustee for involvement in a non-judicial foreclosure sale.  Because Plaintiff fails to overcome the privilege, her tort-based claims against Trustee Corps fail.

### B.    Plaintiff's Contract-Based Claims

As her first cause of action, Plaintiff asserts Ocwen and Freddie Mac are liable for a breach of contract.  (Doc. 1-1 at 12.)  In addition, Plaintiff asserts all Defendants are liable for a breach of the implied covenant of good faith and fair dealing (second cause of action) and promissory estoppel (third cause of action).  (*Id.* at 15-18.)  Though she doesn't allege specifically, Plaintiff appears to base these

causes of action upon the HAMP loan modification she obtained on December 12, 2009 and Defendants' failure to honor the terms of the agreement.  (*See id.*)

### 1.      HAMP background

Congress passed the Emergency Economic Stabilization Act, Pub. L. No. 110-343, 122 Stat. 3756 in 2008.  This included the Troubled Asset Relief Program "which required the Secretary of the Treasury, among many other duties and powers, to 'implement a plan that seeks to maximize assistance for homeowners and … encourage the servicers of the underlying mortgages … to take advantage of … available programs to minimize foreclosures.'"  *Corvello v. Wells Fargo Bank, N.A.,* 728 F.3d 878, 880 (9th Cir. 2013.) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012); 12 U.S.C. § 5219(a)).  In response, the Treasury Department initiated the Home Affordable Modification Program "to incentivize banks to refinance mortgages of distressed homeowners so they could stay in their homes." *Corvello*, 728 F.3d at 880.

Home loan servicers signed a Servicer Participation Agreement, under which "servicers agreed to identify homeowners who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program."  *Wigod*, 673 F.3d at 556. Under the SPA, "servicers would receive a $1,000 payment for each permanent modification, along with other incentives."  *Id.*  Servicers were directed to perform loan modification pursuant to "guidelines and procedures issued by the Treasury," and follow "any supplemental documentation, instructions, bulletins, letters, directives, or other communications . . . issued by the Treasury."  *Id.*

The Treasury set out the process for applying for and receiving loan modification in Treasury Supplemental Directive 09-01 ("SD 09-01"). *See Corvello*, 728 F.3d at 880.  The Ninth Circuit summarized the process as follows:

> First, borrowers supply information about their finances and their inability to pay their current mortgage to the servicer, and the servicer must evaluate whether the borrowers qualify for a loan modification. SD  09-01. The servicer computes modified mortgage payments on the basis of the borrowers' information. *Id.*

> For borrowers who appear eligible to participate in HAMP, the servicer then prepares a TPP.  The TPP requires borrowers to submit documentation to confirm the accuracy of their initial financial representations, and to make trial payments of the modified amount to the servicer. The servicer must use the documentation to "confirm that the borrower[s]" meet the eligibility criteria for a permanent modification. *Id.*

> In the step most critical to this litigation, the servicer then must report to the borrowers

the results of the eligibility determinations. *Id.* If a borrower does not qualify for the HAMP program, the servicer must not only alert the borrower, but must consider alternatives. The servicer should "promptly communicate that [ineligibility] determination to the borrower in writing and consider the borrower for another foreclosure prevention alternative." *Id.* For borrowers who have made all their payments and whose representations remain accurate, the servicer must offer a permanent home loan modification. *Id.*

*Corvello*, 728 F.3d at 880-81.

### 2.    Breach of contract

Plaintiff seems to assert defendants Ocwen and Freddie Mac are liable for a breach of contract based upon her home loan modification she obtained under HAMP.  A claim for breach of contract arises under California law, and a plaintiff must allege (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendants, and (4) resulting damages.  *Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 316 Fed. App'x 661, 662 (9th Cir. 2009) (citing *First Comm. Mort. Co. v. Reece*, 89 Cal. App. 4th 731, 108 Cal. Rptr. 2d 23, 33 (Ct. App. 2001)); *see also Haberbush v. Clark Oil Trading Co.*, 33 Fed. App'x 896, 898 (9th Cir. 2002) (identifying "agreement, consideration, performance by plaintiff, breach by defendant, and damages" as elements to a breach of contract).

Plaintiff entered into the home loan modification agreement with IndyMac Mortgage Services ("IndyMac"), a division of OneWest Bank, FSB.  (*See* Doc. 1-1 at 53-57.)  Under the terms of the loan modification, Plaintiff's first modified payment was due on January 1, 2010.  (*Id.* at 54.)  The parties agreed that Plaintiff would "be in default" if she "d[id] not comply with the terms of the Loan Documents, as modified by th[e] Agreement." (*Id.* at 55.)  Plaintiff alleges that she "provided full performance under the modification agreement by sending timely payments as required under the modification." (*Id.* at 13, ¶ 33.)

Significantly, however, Plaintiff fails to identify any contract entered with *Defendants*.  The loan modification agreement was made between Plaintiff and IndyMac, not Freddie Mac or Ocwen.  Plaintiff has not made any allegations that would support a determination that Defendants are bound to the terms of the agreement between Plaintiff and IndyMac. Indeed, Plaintiff admits she had no loan modification agreement with Defendants because she asserts Defendants failed to offer her "an opportunity to modify her loan." (*See* Doc. 1-1 at 13, ¶ 36.)  Moreover, a Notice of Default was recorded on July 29, 2013, which indicated Plaintiff breached her agreement with IndyMac because she

failed to make her payments beginning March 1, 2013—several months before Ocwen became the servicer of the loan.  (*See id* at 60.)  Consequently, even if Defendants were to be bound to the terms of the HAMP loan modification, Plaintiff's claim for a breach of contract fails because Plaintiff did not fully perform under the terms of the loan modification agreement.

Because Plaintiff fails to allege facts sufficient to support a claim for breach of contract, her first cause of action is **DISMISSED** with leave to amend.

### 3.    Breach of the implied covenant of good faith and fair dealing

California law recognizes that in general, "every contract . . . imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008)(quotations and citations omitted).  "[T]he covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Id.* at 806 (quoting *Racine & Laramie, Ltd. v. Dept. of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992)).  Because the covenant is a supplement, a cause of action for breach of the implied covenant of good faith and fair dealing flows from the existence of a contract. *Tilbury Constructors, Inc. v. State Comp. Ins. Fund*, 137 Cal.App.4th 466, 474 (2006).

"In California, the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (citing Judicial Council of California Civil Jury Instruction 325). Further, the Ninth Circuit has determined "no cause of action for the tortuous breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (quoting *Mitsui Mfrs. Bank v. Superior Court*, 212 Cal.App.3d 726, 730 (1989)).

"Importantly, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff *must identify the specific contractual provision that was frustrated*." *Plastino v. Wells Fargo*

10

*Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) (emphasis added).  As a result, a plaintiff fails to state a claim for a breach of the implied covenant where he fails to "allege[] what contract forms the basis of his claim" or "identif[y] any express provision which has been frustrated." *Lingad v. IndyMac Fed. Bank*, 682 F. Supp. 2d 1142, 1154 (E.D. Cal. 2010).  As discussed above, it is not clear that Plaintiff entered into a contract with any of the Defendants, and it follows that Plaintiff fails to identify a specific contractual provision that was frustrated by Freddie Mac, Ocwen, or Trustee Corps.  Further, Plaintiff has not alleged the existence of a fiduciary relationship with any Defendants. Because Plaintiff fails to allege facts sufficient to support a claim for a breach of the implied covenant of good faith and fair dealing, her second cause of action is **DISMISSED** with leave to amend.

### 4.      Promissory estoppel

Plaintiff's third cause of action is for promissory estoppel against all Defendants.  (Doc. 1-1 at 17.)  "Promissory estoppel applies whenever a promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance would result in an injustice if the promise were not enforced." *Lange v. TIG Ins. Co.*, 68 Cal.App.4th 1179, 1185 (1998).  To state a claim for promissory estoppel, a plaintiff must allege: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal. App. 3d 885, 890 (1976).

Here, Plaintiff alleges that Ocwen "informed Plaintiff to remain in default on the loan if Plaintiff wanted to obtain a modification." (Doc. 1-1 at 17, ¶ 57.)  In addition, she asserts:

> Plaintiff relied upon the Defendants' promise and was thereby induced to take the following actions and inactions: (i) Plaintiff omitted to take further action against the non-judicial foreclosure that had been initiated by the Defendants on the Subject Property by omitting to send the reinstatement check or pursuing other legal action to stop the sale of the property such as a seek (sic) a[] civil temporary restraining order.

(*Id.* at 17, ¶ 58.)  However, Plaintiff fails to allege specific facts regarding what promises were made, by whom, or when. Furthermore, although this cause of action is raised against *all* Defendants, Plaintiff does not assert that any representatives of Freddie Mac or Trustee Corps made any promises to Plaintiff upon which she relied.

11

Because the facts alleged are insufficient to determine whether Plaintiff may state a cognizable claim for promissory estoppel, Plaintiff's third cause of action is **DISMISSED** with leave to amend. *See Alimena v. Vericrest Fin.*, 964 F.Supp.2d 1200, 1219 (E.D. Cal. 2013) (dismissing a promissory estoppel claim based upon a trial payment plan for a loan modification because the plaintiffs did not allege facts sufficient to find the entities' involvement in making a promise embodied in the plan).

## C.    Violation of Cal. Civ. Code § 2937

Plaintiff's fourth cause of action is against all defendants for a violation of the notice requirements of Cal. Civ. Code § 2937 ("Section 2397").  (Doc. 1-1 at 18.)  Specifically, Section 2397 provides in relevant part:

> (a) The Legislature hereby finds and declares that borrowers or subsequent obligors have the right to know when a person holding a promissory note, bond, or other instrument transfers servicing of the indebtedness secured by a mortgage or deed of trust on real property containing one to four residential units located in this state. The Legislature also finds that notification to the borrower or subsequent obligor of the transfer may protect the borrower or subsequent obligor from fraudulent business practices and may ensure timely payments.
> . . .
>
> (b) Any person transferring the servicing of indebtedness as provided in subdivision (a) to a different servicing agent and any person assuming from another responsibility for servicing the instrument evidencing indebtedness, shall give written notice to the borrower or subsequent obligor before the borrower or subsequent obligor becomes obligated to make payments to a new servicing agent.
> . . .
>
> (e) The notices required by subdivision (b) shall be sent by first- class mail, postage prepaid, to the borrower's or subsequent obligor's address designated for loan payment billings, or if escrow is pending, as provided in the escrow, and shall contain each of the following:
>
> > (1) The name and address of the person to which the transfer of the servicing of the indebtedness is made.
> >
> > (2) The date the transfer was or will be completed.
> >
> > (3) The address where all payments pursuant to the transfer are to be made.
>
> (f) Any person assuming from another responsibility for servicing the instrument evidencing indebtedness shall include in the notice required by subdivision (b) a statement of the due date of the next payment.
>
> (g) The borrower or subsequent obligor shall not be liable to the holder of the note, bond, or other instrument or to any servicing agent for payments made to the previous servicing agent or for late charges if these payments were made prior to the borrower or subsequent obligor receiving written notice of the transfer as provided by subdivision (e) and the payments were otherwise on time.

Cal. Civ. Code § 2937.

Plaintiff alleges the defendants are liable for violating the statue because "[n]one of the Defendants has provided the borrower[], Plaintiff, written notice of the transfer or servicing of the indebtedness on the note secured by the Deed of Trust by mail or by certified mail." (Doc. 1-1 at 18, ¶ 63.) Defendants argue Plaintiff fails to state a claim for a violation of Section 2937. (Doc. 6 at 19; Doc. 20 at 9-10.)

### 1.  Claim against Trustee Corps

Trustee Corps argues Plaintiff's claim for a violation of Section 2937 fails against it because the company "is *not* a loan servicer." (Doc. 6 at 19, emphasis in original.) Trustee Corps observes that the provisions of Section 2937 "require[] loan servicers, like Ocwen to give notice to borrowers of transfers of indebtness." (*Id.*) Because Trustee Corps "is a foreclosure trustee which conducts non-judicial foreclosures pursuant [to] a statutory scheme," the defendant argues this claim should be dismissed as to Trustee Corps. (*Id.*) Plaintiff did not address Trustee Corps' argument regarding Section 2937 in her opposition to its motion to dismiss. (*See generally* Doc. 15.) Thus, Plaintiff concedes the action is not viable against Trustee Corps, and her fourth cause of action as stated against Trustee Corps, is **DISMISSED** without leave to amend.

### 2.  Claim against Ocwen and Freddie Mac

Defendants Ocwen and Freddie Mac argue Plaintiff's claim fails because "section 2937 does not, on its face, establish any penalty or private cause of action for failing to give notice." (Doc. 20 at 9.) According to Defendants, Section 2937 "merely provides that until the borrower receives written notice of the transfer, a timely payment to the transferor counts as a timely payment." *Id.* (citing Cal. Civ. Code § 2937(g)). However, even if Section 2937 provides a private cause of action, Defendants assert Plaintiff fails to state a claim because she has not alleged "damages as a result of the statutory violation." (*Id.*) (citing *Faria v. San Jacinto Unified School District*, 50 Cal. App. 4th 1939, 1947 (1996); *Amaral v. Wachovia Mortg. Corp.*, 2011 WL 1205250 at *3 (E.D. Cal. Mar. 29, 2011)).

Notably, Defendants provide no legal authority for the proposition that Section 2937 does not provide a private right of action. Thus, assuming that Section 2937 provides a private cause of action, Plaintiff fails to allege facts sufficient to support a claim. In *Amaral*, this Court dismissed a claim for a violation of Section 2937 with prejudice where the plaintiffs failed to allege "damages as a result of

1    [the] alleged statutory violation." *Amara*, 2011 WL 1205250 at *3.  The Court explained that because

2    the plaintiffs stopped making payments, "the damages of which [they] complain[ed] — damage to their

3    credit ratings, emotional distress resulting from the Notice of Trustees Sale, and the legal fees incurred

4    due to the status of their loan—would have resulted in any event due to Plaintiffs' conscious decision

5    not to make mortgage payments." *Id.*  Similarly, here, Plaintiff made a conscious decision to not make

6    her loan payments beginning March 1, 2013, several months before Ocwen became the servicer of the

7    loan.  (*See* Doc. 1-1 at 60.)  Consequently, Plaintiff fails to allege damages as a result of the notice

8    violations, and her claim for a violation of Section 2937 is **DISMISSED** with leave to amend.

9          **D.**    **Violations of Cal. Civ. Code §§ 2923.6**

10         Plaintiff alleges all Defendants are liable for violations of Cal. Civ. Code § 2923.6, which

11   prohibits "dual tracking" by financial institutions that "continue to pursue foreclosure even while

12   evaluating a borrower's loan modification application." *See Rockridge  Trust v. Wells Fargo, N.A.*, 985

13   F. Supp.2d 1110, 1149 (N.D. Cal. 2013). Trustee Corps argues there is not a private right of action

14   under Section 2923.6.  (Doc. 6 at 20.)  Plaintiff acknowledges that there is no private right of action,

15   but asserts that "the California legislature has … specifically carved out Cal. Civil Code section

16   2924.12, which allows private parties to bring an action for injunctive relief for material violation of

17   Cal. Civil Code section 2923.6."  (Doc. 15 at 13-14.)  However, Plaintiff does not bring her claims

18   related to dual tracking under Cal. Civ. Code § 2924.12, and makes no mention of the statute in her

19   Complaint.  Accordingly, Plaintiff has failed to properly plead a claim for dual tracking, and the fifth

20   cause of action, to the extent it is based on Section 2923.6, is **DISMISSED** with leave to amend.

21   **E.**    **Violations of Cal. Civ. Code § 2923.7**

22         As part of her fifth cause of action, Plaintiff alleges Defendants are liable for a violation of Cal.

23   Civ. Code § 2923.7, which provides that upon a borrower's request for a foreclosure prevention

24   alternative, the servicer must designate a point of contact to communicate directly with the borrower.

25   Cal. Civ. Code § 2923.7(a).  The "single point of contact" can be an individual or a team, but must

26   possess sufficient knowledge about foreclosure alternatives, and have access to individuals who have

27   the ability and authority to stop foreclosure proceedings.  *Id.* § 2923.7(b), (e).

28         Importantly, it does not appear that there is a private right of action for Plaintiff under Section

2923.7, similar to the dual tracking provisions of Section 2923.6.  *See* Cal. Civ. Code §2924.12 (providing a scheme under which a borrower may state a claim for "a material violation" of Section 2923.7).  Regardless, the burden to establish a single point of contact falls to "the mortgage servicer" under Section 2923.7.  Neither Trustee Corps nor Freddie Mac serviced Plaintiff's loan.  Accordingly, Plaintiff is unable to state a claim against Trustees Corps and Freddie Mac and the claim, as against these defendants, is **DISMISSED** without leave to amend.  As to Ocwen, Plaintiff's claim for failure to provide a single point of contact in compliance with Section 2923.7 is **DISMISSED** with leave to amend.

### F.     Negligence

Plaintiff's sixth cause of action for negligence is raised against all Defendants, for actions taken during the trustee's sale and foreclosure  (Doc. 1-1 at 20.)  As discussed above, Plaintiff's tort claim against Trustee Corps are subject to privilege under Cal. Civ. Code §§ 47 and 2924.  Defendants Freddie Mac and Ocwen argue Plaintiff's negligence claim "fails as a matter of law."  (Doc. 20 at 11.)

In general, to state a cognizable claim for negligence under California law, Plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (citing *Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557, 275 Cal.Rptr. 878, 883 (1990)).  "To prevail in an action for negligence, the plaintiff must show that the defendant owed a duty *to the plaintiff*." *John B. v. Superior Court*, 38 Cal. 4th 1177, 1188 (2006) (emphasis added).  Here, Plaintiff alleges "Defendants had a duty to conduct a trustee's sale fairly and openly and in accordance with the statutory framework governing foreclosure."  (Doc. 1-1 at 20, ¶ 72.) Specifically, Plaintiff asserts Defendants had a duty "to provide Plaintiff with any notice of the failure to postpone the Trustee's sale." (*Id.* at 21, ¶ 76.)  However, as Defendants assert, Plaintiff fails to establish that this was a legal duty owed to Plaintiff.  (Doc. 20 at 11.)

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assoc.*, 231 Cal. App. 3d 1089, 1096 (1991).  A lender's liability to a borrower for negligence arises only under special circumstances, such as "when the lender actively participates in the financed enterprise beyond the domain of the usual

money lender." *Id.* (quotations omitted).  The Ninth Circuit explained, "Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, excepting those imposed due to special circumstance or a finding that a joint venture exists." *Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994) The test to determine whether a financial institution owes a duty of care to a borrower "involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *Nymark*, 231 Cal. App. 3d at 1098 (quotations omitted).

Plaintiff argues that her "allegations against Defendants fall outside the conventional role of the Defendants as a mere lender of money." (Doc. 24 at 15.)  Rather, Plaintiff asserts "Defendants (sic) actions comprise of their role as a foreclosing beneficiary and a party to contract." (*Id.*)  However, review of the complaint reveals that Plaintiff's claim for negligence rests on her allegations that Defendants conducted the foreclosure in violation of the law, and failed to notify her that the sale was not going to be halted. (*See* Doc. 1-1 at 20-21, ¶¶ 72-76.)  Without specific facts regarding the actions taken by Ocwen and Freddie Mae, the Court is unable to find that the institutions owed a duty to Plaintiff that was breached during the course of the foreclosure sale. Regardless, it does not appear that Plaintiff is able to allege the requisite elements of causation and damages to support a claim for negligence, because the sale was not the result of the alleged deficiencies in the sale proceeding, but rather a consequence of Plaintiff's default on her loan.  Consequently, Plaintiff's claim for negligence fails as a matter of pleading, and is **DISMISSED** with leave to amend.

**G.    Claim for Violation of California Business and Professions Code § 17200**

Plaintiff's alleges Defendants are liable for a violation California's Unfair Competition Law, as set forth in Cal. Bus. & Prof. Code § 17200, *et seq.* (Doc. 1-1 at 21.)  Under Section 17200, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Therefore, there are three prongs under which a claim may be established under Section 17200. *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1093 (2007) ("Because section 17200 is

1   written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful,

2   unfair, *or* fraudulent—to be considered unfair competition"); *Lozano v. AT&T Wireless Servs.*, 504

3   F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong . . . is a separate and distinct theory of liability").  Here,

4   Plaintiff alleges Defendants are liable for "unfair" practices within the meaning of Section 17200,

5   including "dual tracking" and wrongful foreclosure.  (Doc. 1-1 at 21-24.)

6          Importantly, to have standing to assert a Section 17200 claim, the plaintiff must "(1) establish a

7   loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and

8   (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false

9   advertising that is the gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322

10  (2011) (emphasis in original).  In *Jenkins v. JPMorgan Chase Bank, N.A.*, the court determined the

11  plaintiff was unable to satisfy the standing requirements where she admitted in the complaint "that she

12  defaulted on her loan."  *Id.*, 216 Cal. App. 4th 497, 523 (2013).  The court observed that the plaintiff's

13  "default occurred *prior* to the six unlawful or unfair acts she allege[d] as the basis of her UCL action."

14  *Id.* (emphasis in original).  Further, the *Jenkins* court found it was "indisputable" that the plaintiff's

15  "default triggered the lawful enforcement of the power of sale clause in the deed of trust, and it was the

16  triggering of the power of sale clause that subjected [the] home to nonjudicial foreclosure."  *Id.*

17         Plaintiff's claim for a violation of Section 17200 fails for lack of standing, just as the plaintiff's

18  claim in *Jenkins* failed.  Plaintiff defaulted on the loan in March 2013, several months before

19  Defendants took the actions alleged by Plaintiff and even before Ocwen was the servicer on the loan.

20  Because her default occurred prior to the alleged unlawful acts, the actions could not be the cause of her

21  economic loss.  *See Jenkins*, 216 Cal. App. 4th at 523 ("As Jenkins's home was subject to nonjudicial

22  foreclosure because of [the] default on her loan, which occurred before Defendants' alleged wrongful

23  acts, Jenkins cannot assert the impending foreclosure of her home (i.e., her alleged economic injury)

24  was caused by Defendants' wrongful actions.")  Because Plaintiff is unable to show economic injury

25  caused by the unfair business practices, she lacks standing to pursue a claim under Section 17200, and

26  the claim is **DISMISSED** without leave to amend.

27         **H.    Quiet Title**

28         Plaintiff's tenth cause of action against all Defendants is a claim to quiet title.  (Doc. 1-1 at 27.)

An action to quiet title is brought "to establish title against adverse claims to real or personal property or any interest therein."  Cal. Civ. Proc. Code § 760.020; *see also Peterson v. Gibbs*, 147 Cal. 1, 81 P. 121, 123 (Cal. 1905) (quiet title is brought "to settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to").  To establish a claim for quiet title, Plaintiffs must file a verified complaint that includes:  (a) a description of the property; (b) plaintiffs' title as to which a determination is sought; (c) the adverse claims to the title; (d) the date as to which the determination is sought; and (e) a prayer for the determination of title. Cal. Civ. Proc. Code § 761.020.

Trustee Crops argues the quiet title claim fails because "a quiet title action has an effect only against one who claims an interest in the property at issue." (Doc. 6 at 27, emphasis omitted) (citing Cal. Code Civ. Proc. § 764.030). Further, Trustee Corps asserts the claim fails because "Plaintiff does not allege that [s]he ever paid or cured the underlying debt."  (*Id.*) (citing *Shimpones v. Stickney*, 219 Cal. 637, 649 (1934).  Similarly, Ocwen and Freddie Mac argue Plaintiff's claim for quiet title fails "as a matter of law" because Plaintiff fails "to allege that she has tendered what was owed on the loan." (Doc. 20 at 15.)

### 1.     Claim against Trustee Corps

Under California law, judgment in a quiet title action is binding on persons "who have any claim to the property."  Cal. Code Civ. Proc. § 764.030.  Trustee Corps asserts that it "merely acted as the foreclosure trustee, and has never made any claim of interest in the subject property."  (Doc. 6 at 27, emphasis omitted.)  Plaintiff does not address this argument in her opposition.  (*See generally* Doc. 15.)

Previously, this Court determined that a trustee "is not subject to a quiet title claim because . . . the trustee . . . claims neither a legal nor equitable interest in the property, and its relationship to the property is limited to California non-judicial foreclosure statutes."  *Wood v. Aegis Wholesale Corp.*, 2009 WL 1948844 at *5 (E.D. Cal. July 6, 2009) (citing Cal. Civ. Code § 2934(a)).  Because Trustee Corps has no interest in the property, Plaintiff's quiet title claim against Trustee Corps fails as a matter of law.  *See id.* ("an attempt to amend the claim is unwarranted because [the trustee] has no interest in the property").  Accordingly, Plaintiff's quiet title claim is **DISMISSED** without leave to amend as to defendant Trustee Corps.

2.      Failure to Tender

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 580 (1984) (internal citations and quotations omitted). "A tender must be one of full performance . . . and must be unconditional to be valid." *Id.* Under California law, the "tender rule" requires that an action to set aside a sale "for irregularities in sale notice or procedure" must be "accompanied by an offer to pay the full amount of the debt for which the property was security." *Arnolds Management Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984) (citing *Karlsen v. American Savings and Loan Association*, 15 Cal.App.3d 112, 117 (1971)). Thus, any "cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Id.* at 589. (citing Karlsen, 15 Cal.App.3d at 121.) The Third District Court of Appeal explained:

> [G]enerally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.

*FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021(1989) (citations omitted).

The "tender rule" is meant to prevent courts "from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." *Keen v. Am. Home Mortg. Servicing, Inc.*, 664 F. Supp. 2d 1086, 1101 (E.D. Cal. 2009). As a result, a plaintiff must pay or offer to pay any outstanding debts on the subject property maintain an action to quiet title. *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1177-78 (E.D. Cal. 2010) (citing *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109 (1996); *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948)).  In other words, a quiet title claim requires an allegation that the plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105

Cal.App.4th 428, 439 (2003).  "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assoc.*, 200 Cal.App.3d 1154, 1165 (1988). However, "a tender may not be required where it would be inequitable to do so" or where the action attacks the validity of the underlying debt, because tender would constitute an affirmation of the debt. *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

Here, Plaintiff argues that the tender rule should not be applied because "the foreclosure sale may [have] been avoided," and "requiring tender would be inequitable.  (Doc. 15 at 8, emphasis omitted.)  According to Plaintiff, she alleged "the foreclosure sale could have been avoided because Plaintiff had qualified for a first lien mortgage as an alternative to foreclosure." (*Id.*)  Significantly, this is insufficient to demonstrate tender should not be required.  To prevail on a quiet title claim, Plaintiff must show that she has title superior to that of Defendants.  *See Gerhard v. Stephens*, 68 Cal.2d 864, 918 (1968).  Without making a tender, Plaintiff is unable to do so.  *See Hamilton*, 746 F. Supp. 2d at 1177-78; *Kelley*, 642 F.Supp.2d at 1057.

As an alternative argument, Plaintiff asserts that she "adequately plead tender."  (Doc. 24 at 17.)  In the complaint, Plaintiff alleged:  "At all times relevant herein, and leading up to the foreclosure sale, Plaintiff is willing and able to tender funds to satisfy the alleged deficiency, and was prepared to make that tender if necessary to stop a foreclosure sale." (*Id.*, quoting Doc. 1-1 at 12, ¶ 28.)  However, Plaintiff does not allege that she was able to tender her loan, but rather only that she was able to pay the amount deficient; this is insufficient to demonstrate full tender, and her quiet title claim fails.  *See Karlsen*, 15 Cal.App.3d at 117; *United States Cold Storage v. Great Western Savings & Loan Assn.*, 165 Cal.App.3d 1214, 1224 (1985) ("It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property").  Defendants' motion to dismiss is **GRANTED**, and Plaintiff's tenth cause of action to quiet title is **DISMISSED** without leave to amend.

## I.      Remedies Mischaracterized as Causes of Action

Plaintiff asserts "claims" to set aside the trustee sale (eighth cause of action) and to cancel the

trustee's deed (ninth cause of action). (*See* Doc. 1-1 at 25-26.) However, these are remedies, not independent claims. *See Sirrium v. Bank of Am., N.A.,* 2012 WL 2450715 at *2 (E.D. Cal. June 25, 2012) ("cancellation of a trustee's deed is an equitable remedy); *Capodiece v. Wells Fargo Bank*, 2013 WL 1962310 at *7 (N.D. Cal. May 10, 2013) (noting the plaintiffs' requests for injunctive relief and for an order setting aside the trustee's sale "cannot be independent claims [because] they are types of remedies"). Accordingly, Plaintiff's eighth and ninth causes of action are **DISMISSED** without leave to amend.

**VI.     Conclusion and Order**

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' motions to dismiss (Docs. 5 and 20) are **GRANTED IN PART** as follows:

1.    Plaintiff's first cause of action (breach of contract), second cause of action (breach of the implied covenant of good faith and fair dealing), third cause of action (promissory estoppel), fourth cause of action (violation of Cal. Civ. Code § 2937 as to Defendants Ocwen and Freddie Mac), fifth cause of action (violation of Section 2923.6 and violation of Section 2923.7 as to defendant Ocwen) and sixth cause of action (negligence as to Ocwen and Freddie Mac) are **DISMISSED with leave to amend**;

2.    Plaintiff's fourth cause of action (violation of Cal. Civ. Code § 2937 as to Trustee Corps), fifth cause of action (violation of 2923.7 as to defendants Trustee Corps and Freddie Mac), sixth cause of action (negligence as to Trustee Corps), seventh cause of action (unfair business practices in violation of Cal. Bus. & Prof. Code § 17200), eighth cause of action (to set aside the trustee's sale), ninth cause of action (cancel trustee's deed) and tenth cause of action (quiet title) are **DISMISSED without leave to amend**; and

3.    Plaintiff is granted 21 days leave to file a First Amended Complaint.

IT IS SO ORDERED.

Dated:   **September 16, 2014**                    **/s/ Jennifer L. Thurston**
                                                                   UNITED STATES MAGISTRATE JUDGE